THURSTON, GARDNER, & Co. *v.* CHARLES T. JAMES.

SAME *v.* SAME.

.Where money is advanced to a third person for the use of the defendant, and at his request, or, to the defendant, upon the note of a third person, accompanied by the promise of the defendant to meet the note, the obligation of the defendant to repay the advance is primary, and does not require written proof, as if it were a promise to pay the debt of another.

Where the plaintiffs had advanced to the defendant the amount of a note of a third person, which the defendant had procured to be made directly to them, upon the defendant's promise to meet it at maturity if not collected of the maker, and instead of being collected it was sold by the plaintiffs, without the knowledge of the defendant, for less

than its face; *Held*, that the subsequent approval by the defendant of the sale, and promise to pay the difference between the amount advanced upon the note and the proceeds of sale, was, as a ratification of the sale, equivalent to a prior authority to the plaintiffs to sell, instead of waiting to collect, the note.

An agreement by the parties to promissory notes, made subsequently to the notes, that certain commissions, contemplated by the agreement to be earned by the maker of the notes in the business of the holders, should be applied to the payment of the notes, if sufficient, until the whole amount due upon them was paid, and if the whole amount was not thus paid at the maturity of the notes, that a renewal note should be received for the balance payable in two years, is no bar to an action upon the notes, within the two years, for the recovery of the amount due thereon.

The mere taking of security from the principal debtor upon promissory notes, by way of mortgage of his property, is no discharge of a surety upon the notes.

THESE were actions of assumpsit, brought by the plaintiffs, who were steam-engine builders, to recover of the defendant, who had been a contractor for the building and furnishing of steam-cotton mills, a large sum of money, as due by promissory notes, for money advanced, and for work and labor done. The declarations counted upon three several promissory notes, made by the defendant, all dated August 16, 1852, payable to the order of Thurston, Greene & Co. and held by the plaintiffs under indorsements in blank; two, for $6,000 each, one of which was payable in two, and the other in three years after date, and both indorsed by Alfred R. Fiske, a son-in-law of the defendant, and former partner in the plaintiff firm; the third note, counted upon, being for $5,000, payable three years after date, and not bearing Fiske's indorsement. The declarations also contained counts for work and labor, and the usual money counts.

Both actions were, at the March term of this court, 1859, under pleas of the general issue, submitted, by agreement, to the same jury at the same time. At the trial before Mr. Justice Bosworth, amongst other claims made by the plaintiffs under the money counts, was one for $225, for money advanced by the plaintiffs, at the request of the defendant, to General Ward B. Burnett, of the city of New York. The evidence upon this claim, as reported by the judge was, that the plaintiffs received a letter from the defendant requesting them to deposit in the Mechanics' Banking Association, in New York, to the credit of Burnett, the sum of $225, and stating, that it was desirable not to be known in the transaction; that if a certain contract was

obtained, then "all right"; but if not, then the money would be repaid; that the sum was deposited by the plaintiffs as requested, was by them charged in their books to Burnett, and was afterwards spoken of in a letter written by them, as money loaned to Burnett; that, subsequently, upon their calling upon Burnett, by letter, to repay to them the amount, he replied, declining all explanation with them upon the subject, as persons, so far as he knew, having no connection with the matter, and stating, that he expected soon to see the defendant, when he would remind him what he paid the money for. The defendant requested the court to charge the jury, that the plaintiffs could not recover said sum of him unless they produced a promise on his part, in writing, to pay the same, or, unless they proved that said sum of money went to the use of the defendant. The court, however, declined to give this instruction, but told the jury, that unless they were satisfied by the evidence that the money was advanced by the plaintiffs to the defendant, and for his use, the defendant was not liable in these actions.

Another claim made by the plaintiffs against the defendant, under the money counts, was for $1,000, advanced by the plaintiffs to Lyman Frieze, at the request of the defendant. The request of the defendant to the plaintiffs to make the advance by an acceptance at four months, he engaging to meet it, and stating, that it was to relieve Frieze from a liability which he had incurred on the defendant's account, was proved by the defendant's letters. One of the plaintiffs swore, also, to their acceptance of Frieze's draft for $1,000, and to their taking it up by their promissory note, which was subsequently paid by them. Upon this state of the evidence, the defendant requested the court to instruct the jury in the same manner as he had before requested with regard to the advance to Burnett, which the court declined to do, and instructed the jury in the same way with regard to this, as with regard to that, claim.

A like request was refused, and a like instruction given, with regard to a claim for the sum of $124, made by the plaintiffs under the money counts, for a deficiency arising from the sale of the note of one Wilson. The evidence upon this claim, as

reported, was, that the defendant brought to the plaintiffs a note of one Wilson for $500, made payable to them, and that they furnished him the money upon it, he requesting them to collect it; that at the maturity of the note it was sent to New York, where Wilson was, for collection; that the person to whom it was sent sold the note for less than its face by the amount claimed, and remitted to the plaintiffs the proceeds of sale; that the sale was subsequently spoken of by the defendant as a good one, and that the defendant promised the plaintiffs to pay them the difference between the amount of the note, advanced to him thereon, and the sum for which it was sold.

To the promissory notes counted upon, as made by the defendant to Thurston, Greene & Co., several defences were set up :—

*First :* That by a written agreement, entered into between said Thurston, Greene & Co. and the defendant on the 29th day of October, 1852, and produced in evidence, the defendant was to have a commission of five per cent. upon all the work that he should procure to be done at the shop of said Thurston, Greene & Co., to be credited to him when the work was paid for, and applied to the payment of said notes until all were paid, provided the commissions should amount to a sum sufficient to pay them; and that, in case said commissions did not amount to a sum sufficient to pay all of said sums at maturity, the balance remaining unpaid should be renewed for two years, the renewal note to be indorsed by Alfred R. Fiske. By reason of this contract, the defendant requested the court to charge the jury, that the defendant had a right to pay, and was only liable to pay said notes by the application of his commissions specified in the contract; and that if the notes were, or might at any time be payable in money, or in any other way than by such commissions, it was a condition precedent to such right of recovery that the plaintiffs should commence no action upon the notes until the expiration of five years from the date thereof. The court qualified the instruction asked, by telling the jury, that if the defendant had not paid the notes according to the contract, he was liable to an action to recover the amount due upon them.

The *second* defence to the notes, in substance, was, that although upon their face the defendant was the principal, and Alfred R. Fiske only secondarily liable, yet in truth, upon the evidence, Fiske was the principal and the defendant only a surety, as was well known to the plaintiffs when they took the note, and that time had been given by the plaintiffs to Fiske without the consent of the defendant; and the defendant requested the court to charge the jury, that if, upon the evidence, they found such to be the true relative position of Fiske and the defendant, and that the plaintiffs had given time to Fiske on said notes, the defendant was discharged therefrom.

This instruction the court gave to the jury; but also instructed them, that the mere receiving by the plaintiffs of property from Fiske as security, or by way of mortgage, for the payment of the notes, would not discharge the defendant therefrom.

It appeared further, that Alfred R. Fiske, a former partner in the plaintiffs' firm, on the 23d day of June, 1857, for a nominal consideration, assigned to Henry W. Gardner, another copartner, all his interest in the property of the firm, and at the same time received from Gardner an instrument, which, after reciting that Fiske was indebted to the plaintiffs as indorser of the two notes in suit, for six thousand dollars each, and in other sums of money, contained a covenant by Gardner, that upon payment of said notes and other sums of money due the firm at any time within five years from date, he would reconvey Fiske's interest in the firm property, subject to its debts, to Phebe Fiske, the wife of Alfred.

The defendant requested the court to charge the jury, that, by the proper construction of this contract, the plaintiffs gave to said Fiske an additional period of five years for his whole debt to them, including said notes guarantied by him. This request the court refused to give. The remaining evidence is sufficiently stated in the opinion of the court to render the opinion intelligible.

Under these instructions the jury having found, in one of the actions, a verdict for the plaintiffs for the sum of $16,800, and in the other for the sum of $9,013.87, the defendant now

moved for a new trial, upon the ground of error in matter of law in the above instructions and refusals to instruct.

*T. A. Jenckes*, for the defendant:—

*First.* As to the matter embraced in the first three rulings excepted to, the defendant cannot be held liable for the amount of the items therein referred to, unless some promise or agreement in writing, signed by him, and binding him to pay the same, was produced in evidence. No such writing was offered, and the court should have directed a verdict for the defendant on these items, upon the evidence submitted. No debt owing from the defendant to the plaintiffs is shown in either of these cases. Brown on Stat. of Frauds, sect. 154–160.

*Second.* The proper construction of the contract of Oct. 29, 1852, is as stated in the request to charge, embodied in the fourth exception.

*Third.* The action was prematurely brought upon the notes in suit, as controlled by the contract of Oct. 29, 1852. *Facquire* v. *Kynaston*, Ld. Raymond, 1249; *Mussen* v. *Price*, 4 East, 147; *Price* v. *Nixon*, 5 Taunton, 339; *Helps* v. *Winterbottom*, 2 B. & Ald. 431.

*Fourth.* The court should have complied with the defendant's requests to charge the jury with regard to the relative position of Fiske and the defendant, as principal and surety, and the effect of the conduct of the plaintiffs in discharging the latter's suretyship upon the notes sued. 2 Am. Lead. Cases, 317, 451, and cases cited.

*Fifth.* The proper construction of the instruments of June 23, 1857, was to vest the property conveyed in the plaintiffs absolutely, giving time to Fiske to pay his debt, with a condition, that if he should pay it within the time limited, certain rights would accrue to his wife, which might or might not have been enforced or complied with.

*Thurston* for the plaintiffs :—

1st. As to the amount advanced to Burnett. This instruction was correct. The act of forwarding money at the defendant's request and presumably for his benefit, to Burnett, did not make Burnett debtor to the plaintiffs, so as to bring the transaction, with respect to the defendant, within the provisions of the statute of frauds.

The fact that the money was entered on the plaintiff's books as a charge against Burnett, is only evidence proper for the jury to consider upon the question whether the loan was in reality made by the plaintiffs to him, and might well be outweighed by the fact that Burnett was personally unknown to them, and by the circumstances under which the money came to be sent. The undertaking of the defendant was not to pay the debt of another, but was a request to them to furnish money to a particular person, and it is fairly to be presumed for his own purposes and benefit. Roberts on Frauds, 216; Browne on Frauds, sects. 198, 199.

2d. As to the amount paid on the Frieze acceptance. This instruction was correct; for it was entirely immaterial to the defendant how the plaintiffs advanced the money to Frieze, whether by their note, or acceptance, or in cash.

3d. As to the deficiency in sale of the Wilson note. The question for the jury was, whether the plaintiffs had purchased the note of the defendant, or had only furnished the money to him upon it for his accommodation. It did not appear that the plaintiffs and Wilson had any transactions with each other; and it was competent for the jury to find under the evidence, that the money was furnished upon it for the benefit of James, and that he assented to the disposition of the note, by sale.

4th. As to the contract of October 29, 1852. There was no evidence that the defendant had ever procured any work upon which he could claim a commission; in fact, the defendant sought to justify his neglect on the ground that the plaintiffs had broken their agreement made with him. There was no evidence that the defendant ever offered to renew the notes. With respect to the objection that the action could not be maintained until five years after the date of the notes, it could apply but to two of the notes, as the third was more than two years overdue when the suit was commenced, but the objection was altogether too late; the pleadings would not admit of the question being raised. *The agreement being executory is no bar to the action.* Hawes et al. v. Marchant, 1 Curtis's C. C. R. 136; *Dorr* v. *Tuttle,* 4 Mass. 414; *Perkins* v. *Gilman,*

8 Pick. 229; *Central Bank* v. *Willard*, 17 Pick. 150; *Walker* v. *Russell*, 17 Pick. 283; *Delacroix* v. *Bulkley*, 13 Wend. 71; *Allen* v. *Kimball*, 23 Pick. 274.

5th. As to the relative position of Fiske and the defendant, whether that of principal and surety, it was properly left, upon the whole evidence, to the jury.

6th. As to the effect of a giving of time by the creditor to the principal without the assent of the surety, the court charged as requested, but also properly charged that a receipt of property by way of security from the principal, did not, of itself, amount to such giving of time, or affect the creditor's *right* at law to proceed against the surety.

7th. As to the agreement of June 3, 1857. The court properly ruled that the agreement was not one of "giving time." The right to sue Fiske on the notes was unaffected by it; and even if it were otherwise, it could only avail the defendant in the event that the jury found that Fiske was the real maker of the notes and the defendant a surety.

BOSWORTH, J. These were actions brought by Thurston, Gardner, & Co. of the City of Providence, against Charles T. James, to recover the amount of three promissory notes, two of them for $6,000 each, and one for $5,000. The notes were signed by the defendant, and two of them were indorsed by Alfred R. Fiske, son-in-law of the defendant. The note for $5,000 had no indorser upon it. There were several other causes of action embraced in the declarations, some in reference to which there was no dispute at the trial. There were three matters of claim under the money counts of the declaration, which were disputed on the trial. Upon the rulings and charge of the court, in reference to these three claims, as well as in reference to the three notes aforementioned, exceptions were taken, which are to be considered in determining this motion for a new trial.

The first three exceptions relate to the rulings of the court upon the claims set up under the money counts. The plaintiff, at the request of the defendant, had caused a sum of money to be placed to the credit of a third person in a banking institution in New York, and had charged the money to the person to

whose credit it was placed.  The defendant, at the time of making the request, desired that the plaintiffs' name should not be known in the transaction, and stated, that if the Sickles' patent was obtained, it would be all right; if not the money would be paid back.  Subsequently the plaintiffs wrote to the party in New York, to whose credit the money was placed, on the subject, and received an answer denying all knowledge of the plaintiffs in reference to the money, and all accountability to them; saying, that when he saw the defendant, he would remind him what he paid him the money for.  In a letter from the plaintiffs to the defendant the matter was spoken of as the loan to the third person.  The defendant requested the court to charge the jury, that he was not liable for the amount claimed, unless a promise in writing to pay it was produced and proved. The court did not so charge; but did charge, that unless the jury were satisfied from the proof, that the money was paid to the use of the defendant and at his request, he was not liable in this action.  It is plain, that there was no error in this charge.  It was of no importance whether the promise was in writing or not.  If the money was paid for the defendant's use, and at his request, he was liable whether the promise was verbal or written.  If it was the debt of another, the defendant would not be liable under the money counts in the declaration, whether the promise was in writing or not.  Under this charge, the jury must have found that the money was advanced on the personal credit of the defendant.  To this fact the plaintiff, Gardner, on his direct examination in the cause, testified.  We think the matter was properly left to the jury, and their verdict ought to be satisfactory.

The second and third exceptions are of the same character, as to the claims of the plaintiffs for money advanced to Frieze, upon the Wilson note, and are overruled, on the same grounds.

One other ground is however embraced in the third exception.  It seems that the amount of a note for $500, less the discount, was advanced by the plaintiffs to the defendant, which note was made by James J. Wilson, and was payable directly to the plaintiffs.  This note was not indorsed by the defendant but was delivered by him to the plaintiffs, he request-

Thurston, Gardner, & Co. *v.* James.

ing them to collect it. At the maturity of the note, it was not paid, and the plaintiffs sent it to New York, where it was sold for less than the amount due upon it. The amount collected was credited to the defendant, and the balance was claimed in this suit. The sale was made without the knowledge of the defendant; but on learning the fact he pronounced the sale a good one, and promised the plaintiffs to pay them the balance. We think the jury had a right to infer from this ratification of the sale, an authority to make it; and the judge did not err in refusing to charge the jury, that by reason of this sale the defendant was discharged from his liability.

The instructions claimed by the defendant as to the contract of October 29, 1852, could not properly have been given. This contract provided, that the defendant should perform certain services for the plaintiffs, for which he was to receive certain payments, which payments were by the agreement to be indorsed on the notes for $6,000 and $5,000, above referred to, as they were earned, until the full amount of the notes was paid; and further, if the sums to be thus earned by the defendant should not be sufficient to pay the notes in full, at the time when they became due, then the notes were to be renewed for the balance for two years. This contract bore date subsequent to the date of the notes. At the times when the notes became due, nothing had been earned by the defendant, to be applied on the notes under the contract. The notes had all become due when the suit was commenced; no part of them had been paid, and no renewal had been made or offered. The court were asked to instruct the jury, that under the contract, the defendant had a right to pay, and was only liable to pay in his services as specified in said contract; and consequently that the plaintiffs could not recover the amount of the notes in this suit. The plaintiffs had made a contract with the defendant collateral to the notes, which the defendant had not performed, and therefore he claimed, that he was not liable to perform the principal contract. The terms of the collateral contract can bear no such absurd interpretation. The court instructed the jury, that though by the terms of this contract the defendant had a right to pay in his services, yet if he

had not so paid, he was liable in a suit on the notes. By the fifth exception it appears, that the court refused to instruct the jury, that said contract being in evidence, it was a condition precedent, that the plaintiffs should not commence their action on the notes until the expiration of five years from the date of said notes. There was no such condition expressed, but merely an agreement, that if the notes should not be fully paid by the application of the defendant's earnings at their maturity, they should then be renewed for two years. If there was such a condition precedent, it must be inferred from this agreement for renewal; and in that case, the agreement would amount to an agreement not to sue for two years after the maturity of the notes. If the defendant had performed his promise under the collateral contract, i. e. made the contemplated payments before the maturity of the notes, and then renewed his notes for any balance that might have remained due, the purpose of the collateral contract would have been attained, and the plaintiffs would have been liable on the collateral contract for damages if they had refused to renew. But the evidence showed, that he had made no payment under that contract nor renewed the notes; and with respect to one of the notes in suit, the true time to which a renewal would have extended the liability of the defendant had expired when these suits were commenced.

It is well settled, that an agreement, or a covenant not to sue for a given time, does not amount to a defeasance and cannot avail as such, but is a covenant only on which an action may be brought for damages; though a covenant never to sue may avail as a release to avoid circuity of action. *Dorr* v. *Tuttle*, 4 Mass. 414; *Perkins et al.* v. *Gilman*, 8 Pick. 229; *Central Bank* v. *Willard*, 17 Pick. 150; *Allen* v. *Kimball*, 23 Pick. 473; *Chandler* v. *Herrick*, 19 Johns. Rep. 129. There was, therefore, no error in the refusal of the court to instruct the jury as requested.

As to the alleged error complained of in the rulings of the court with regard to whether the defendant was a surety on the notes sued, and discharged by the acts of the plaintiffs, we cannot see that it would have been proper for the court to have given instructions more favorable for the defendant than were

10 *

given; or, that there is, in what the court charged or omitted to charge, any reason for granting to the defendant a new trial. The court permitted the defendant to introduce evidence which, as he claimed, went to show that the defendant, though appearing on the face of the notes in suit as principal, was, in reality, a surety only, and charged the jury, that if from the evidence they found that he stood in the relation of a surety, he would be entitled to the equitable defence which a surety has by law, when the holder of the note has given time to the principal, if in this case they found that time had been given.

The case shows, that at the time when the notes were given by the defendants, Alfred R. Fiske received from the plaintiffs a conveyance of one quarter interest in the copartnership property of Thurston, Gardner, & Co. The defendant testified, that this conveyance was the consideration for the notes, two of which were signed by him and indorsed by Fiske, and one of them was signed by the defendant alone. The court were asked to charge the jury, that if they found that this conveyance to Fiske entered into and formed the consideration, or a part of the consideration of the notes, then said Fiske was the original or contracting party on the notes, and the defendant stood in the relation of guarantor or surety. The court refused to give this instruction; but left the fact to be found by the jury from the whole evidence in the case. There can be no doubt as to the propriety of the court's refusal to charge as requested. The fact of the conveyance certainly was not conclusive upon the point. The defendant might buy the property for his son-in-law, and direct the conveyance to be made to him. The fact that one of these notes had not the name of Fiske upon it, and the fact that by the collateral contract provision was made that all the notes might be paid by the personal services of the defendant, would indicate that the defendant was the principal on the notes. How could Fiske be principal on a note which he had not signed at all? Certainly the instruction asked would have been improper had it been given.

It also appeared, that on the 23d of June, A. D. 1857, Fiske had conveyed his one quarter part of the copartnership prop-

Thurston, Gardner, & Co. v. James.

erty to Henry W. Gardner, one of the plaintiffs, taking from him a bond that in case of the payment of the said notes and his other liabilities to the firm of Thurston, Gardner, & Co. at any time within five years, he would make conveyance of said property to the said Fiske's wife. The court were asked, in view of that fact, to instruct the jury, that the acceptance of that conveyance discharged the defendant from his liability on the notes to the extent of the value of such property. The court did not so charge. Clearly they could not so charge. In the first place, this conveyance was not made to the plaintiffs; and though the bond given by Gardner to Fiske contemplated a holding of the property as security until the notes were paid, the plaintiffs had no other than a mortgage interest in it, and that not standing in their names. It could not, therefore, be held as payment whereby the defendant was discharged. Nor could the taking of this conveyance be held, as the defendant requested the court to charge that it should be, as a giving of time on the contract for payment of the notes, so as to discharge the defendant, considering him as surety on the notes. There was, in the fact of taking this conveyance, even if it had been taken by the plaintiffs, no giving of time, in the sense in which the law holds the giving of time to the principal to be a discharge of the surety on a note. The plaintiffs were not debarred from prosecuting their claim against Fiske the next day after the contract was made. Nor was there anything to prevent the defendant from paying the notes and pursuing his remedy against Fiske, if any he had, whenever he might choose to do so. Under such circumstances, the taking of security can work no injury to the defendant, even if he were a surety. Indeed it must be to his advantage; as by a proper proceeding in equity, if he were a surety, he could make that security enure to his own benefit, to the extent of its value.

On the whole, among the many exceptions taken to the rulings of the court in this case, we find no error of which we think the defendant can complain, and no ground for awarding to him a new trial.

*Motion denied with costs.*